```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

FRANK S. VILLA,

                 Plaintiff,

    -vs-                            **No. 1:14-CV-00463 (MAT)**
                                            **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                 Defendant.
_____

**I.   Introduction**

Represented by counsel, Frank S. Villa ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI").  The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II.  Procedural History**

The record reveals that in February 2010, plaintiff (d/o/b November 28, 1965) applied for SSI, with an amended alleged onset

date of December 10, 2009.[1] After his application was denied, plaintiff requested a hearing, which was held before administrative law judge Nancy G. Pasiecznik ("the ALJ") on October 19, 2011. The ALJ issued an unfavorable decision on September 28, 2012. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of the Evidence

#### A. Medical Record

The record reveals that, during the relevant time period,[2] plaintiff treated primarily for complaints of back pain as well as mental health issues. Dr. George Haddad, plaintiff's primary care physician, treated plaintiff 18 times during a 20-month period spanning from December 14, 2009 through August 24, 2011. Dr. Haddad's treatment notes are mostly handwritten and largely illegible, but what little can be gleaned from them indicates that plaintiff regularly complained of back pain and sought medication

---

[1] Plaintiff previously applied for SSI in January 2006, alleging disability as of January 1, 2002. That claim was denied on April 7, 2009. After a remand by the Appeals Council, a second unfavorable decision was issued on December 9, 2009. That decision became the final decision of the Commissioner on October 26, 2010, when the Appeals Council denied review. At the hearing held in the instant case, plaintiff's counsel amended his alleged onset date to December 10, 2009, as his disability status preceding that date had been finally decided in the prior proceeding.

[2] The relevant time period for this SSI application runs from the date of the application, February 28, 2010, through the date of the ALJ's decision, September 28, 2012. See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 486 (2d Cir. 2012).

management. It is unclear from the records whether Dr. Haddad performed physical examinations at plaintiff's visits; many of the areas on the treatment forms which would normally contain physical examination findings are crossed out with handwritten marks. One treatment note, see T. 343, appears to reference an X-ray, but the record does not indicate whether Dr. Haddad ordered any testing in addition to his own primary treatment.

Regarding mental health impairments, the record contains treatment notes from Horizon Health Services ("Horizon") where plaintiff was treated by nurse practitioners ("NP") Katie Millard and Sharon Yager. The record reflects that plaintiff treated primarily for medication management with the nurse practitioners, while receiving biweekly psychological counseling from licensed mental health counselor ("LMHC") Joellen Dinse. However, as plaintiff points out, LMHC Dinse's treatment notes do not appear in the record. Plaintiff's diagnoses included mood disorder, not otherwise specified ("NOS"); psychotic disorder, NOS; anxiety disorder NOS; depressive disorder, NOS; narcissistic personality disorder; antisocial personality disorder; cocaine abuse; hallucinogen dependence; and cannabis dependence. Plaintiff's substance abuse disorders appeared to be in remission, as the ALJ noted.

On initial mental status examination in November 2009,[3] NP Millard noted that plaintiff was a poor historian with "extremely poor insight" and "tangential thought process [with] blocking." T. 263. She prescribed Abilify, an antipsychotic mood stabilizer. Upon subsequent treatment, plaintiff demonstrated noncompliance with his Abilify prescription; treatment notes indicate that as of September 2011, NP Yager discontinued his Abilify prescription "since [plaintiff] already [had]" stopped taking it, and instead prescribed Depakote (an anticonvulsant and mood stabilizer generally used to treat symptoms of seizures and bipolar disorder) and Klonopin (a sedative generally used to treat seizures, panic disorder, and anxiety). T. 365.

B.   **Treating Source Opinions**

Dr. Haddad completed a lumbar spine residual functional capacity ("RFC") questionnaire in August 2011. Dr. Haddad opined that plaintiff could not walk even one city block without experiencing pain; he could sit and stand for only 15 minutes at one time; and he could sit, stand, and/or walk for less than two hours in an eight-hour workday. According to Dr. Haddad, plaintiff could occasionally lift less than 10 pounds but rarely lift 20 pounds or more; and he could never stoop, rarely climb ladders,

---

[3] Although this treatment note predates the relevant time period, it is discussed here to give context regarding the severity of plaintiff's mental health impairments, considering the relative lack of treatment notes in the record which relate to the relevant time period.

occasionally crouch and squat, and frequently twist or climb stairs. In Dr. Haddad's opinion, plaintiff would miss more than four days of work per month, and his symptoms were severe enough to interfere with the "attention and concentration needed to perform even simple work tasks" on a constant basis. T. 334.

Regarding mental health impairments, LMHC Dinse submitted a mental RFC questionnaire dated September 2011. LMHC Dinse indicated that she had treated plaintiff on a biweekly basis since October 2009. LMHC Dinse noted various psychological symptoms "per client report." T. 367. She also assessed plaintiff's functional capacity (notably, in this area LMHC Dinse did not indicate that her responses were per plaintiff's report), opining that plaintiff was seriously limited in maintaining regular attendance and being punctual within customary tolerances, working in coordination with or proximity to others without being unduly distracted, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.

LMHC Dinse opined that plaintiff was "unable to meet competitive standards" in various areas of working functioning, including dealing with normal work stress. T. 368. In LMHC Dinse's opinion, plaintiff had "no useful ability to function" in remembering work-like procedures, maintaining attention for a two-hour segment, and completing a normal workday and workweek without interruptions from psychologically based symptoms. Id. In a

handwritten comment, LMHC Dinse stated that plaintiff's "memory and concentration [were] very poor," and that he had "difficulty concentrating/focusing for long periods of time" and "difficulty with time management." Id. According to LMHC Dinse, plaintiff's impairments would cause him to miss more than four days of work per month, and his symptoms were expected to last at least 12 months.

**C.   Consulting Opinions**

Dr. Donna Miller completed a consulting internal medicine examination, at the request of the state agency, in June 2010. Dr. Miller opined that plaintiff had "mild limitation" with repetitive bending, turning, twisting, lifting, carrying, reaching, and pushing. T. 287. An X-ray performed in conjunction with Dr. Miller's exam showed degenerative changes of the lumbar spine.

Psychologist Dr. Gregory Fabiano completed a consulting psychiatric examination, at the request of the state agency, in June 2010. On mental status examination ("MSE"), Dr. Fabiano noted that plaintiff's "manner of relating, social skills, and overall presentation was poor," and that he "was easily agitated and skipped from topic to topic, often moving to topics that related to him being upset or angry with a particular situation." T. 292. Plaintiff demonstrated a tense mood and restless motor behavior as well as an irritable affect and mood. Nevertheless, Dr. Fabiano found no significant work-related restrictions, opining that the results of his evaluation "appear[ed] to be consistent with

psychiatric problems, but in itself, this [did] not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis." T. 294.

## IV. The ALJ's Decision

At step one of the five-step sequential evaluation, see 20 C.F.R. § 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 28, 2010, the application date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: bipolar disorder; depressive disorder; personality disorder with narcissistic features; and anxiety disorder, not otherwise specified ("NOS"). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was limited to lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; he could sit for two hours at a time and up to eight hours total in an eight-hour workday, with normal breaks; he could stand/walk for about six hours total in an eight-hour workday, with normal breaks; and he was limited to simple, repetitive, routine tasks in a low contact environment. At step four, the ALJ found that plaintiff had

no past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**V. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A. Failure to Develop the Record**

**1. Mental Impairments**

Plaintiff contends that the ALJ failed to properly develop the record and erroneously rejected the opinion of plaintiff's treating counselor, LMHC Dinse. As discussed above, LMHC Dinse opined that plaintiff had various, quite serious, mental health symptoms producing significant work-related limitations which, if credited, would prevent him from sustaining full-time employment. The Court agrees with plaintiff that the ALJ did not properly develop the

record in this case, and this failure resulted in a finding unsupported by substantial evidence.

LMHC Dinse's opinion indicates that she treated plaintiff, on a biweekly basis, for an approximate two-year period of time. However, the medical record contains *none* of these treatment notes; rather, the record contains only the treatment notes of NPs Millard and Yager, who appeared to see plaintiff primarily for medication management. There is no indication in the record that the ALJ attempted to obtain LMHC Dinse's treatment notes.

The ALJ did not explicitly state what weight, if any, she gave to LMHC Dinse's opinion. However, it is apparent that the ALJ did not give the opinion any significant weight, as she found that the record did not support the symptoms indicated in LMHC Dinse's opinion. Specifically, the ALJ found that "[t]he fact that [LMHC Dinse] merely indicated what [plaintiff] reported are his symptoms also cast[] doubt on the objectivity of her assessment of [plaintiff's] ability to perform mental work-related activities." T. 16.

The ALJ also found that LMHC Dinse "[was] not an acceptable source," and found her opinion inconsistent with those of consulting examining psychologist Dr. Fabiano and reviewing psychologist Dr. T. Andrews, which opinions he apparently gave greater weight. T. 16-17. As plaintiff points out, it was error for the ALJ to fail to state the weight given to the consulting

9

opinions, in this case where no treating source opinion as to plaintiff's mental health impairments was presented or weighed. See Duell v. Astrue, 2010 WL 87298, *5 (N.D.N.Y. Jan. 5, 2010) ("The regulations further require an ALJ to 'explain in the decision the weight given to the opinions of a State agency medical or psychological consultant,' unless the ALJ has given controlling weight to the opinions of a treating source.").

Additionally, contrary to the ALJ's finding that LMHC Dinse was "not an acceptable source," T. 16, LMHC Dinse was in fact an "other source" within the meaning of the regulations, and therefore her opinion was entitled to be weighed. See 20 C.F.R. § 416.913(d); SSR 06-3p (noting that ALJs "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case"). Nevertheless, the Court can glean, from the ALJ's discussion, her reasoning in rejecting LMHC Dinse's opinion. However, the ALJ's analysis was flawed because it was based on an incomplete record. The ALJ concluded that the record failed to support plaintiff's complained-of symptoms, yet the record lacked LMHC Dinse's treatment notes, and there is no indication in the record that the ALJ attempted to obtain those notes.

Although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the claimant's] *complete medical history*, including arranging for a consultative examination(s) if necessary, *and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources*." 20 C.F.R. § 416.945 (emphasis added). Because LMHC Dinse apparently treated plaintiff every two weeks for two years in her capacity as a licensed mental health counselor, it was imperative for the ALJ to review these records before making her determination. The ALJ's failure to do so constituted reversible error. See Simcox v. Colvin, 2016 WL 228359, *4 (W.D.N.Y. Jan. 19, 2016) ("Considering [the consulting] mental status examination, which noted some abnormalities, along with the additional evidence in the record indicating that plaintiff was in regular treatment for psychiatric issues, the Court finds that the ALJ did not adequately develop the record with regard to plaintiff's mental impairments."); Metaxotos v. Barnhart, 2005 WL 2899851, *5 (S.D.N.Y. Nov. 3, 2005) (remanding where ALJ failed to develop the record by not obtaining treatment notes, records, or opinions from plaintiff's treating psychiatrist).

This matter is therefore reversed and remanded for further development of the record. On remand, the ALJ is directed to obtain

11

plaintiff's full record of treatment at Horizon, including LMHC Dinse's treatment notes, and to properly consider the complete record when reevaluating LMHC Dinse's opinion regarding plaintiff's mental functional limitations.

The Court notes that, in accordance with SSR 06-3p, "in some circumstances, an opinion of an 'other source' with a particularly lengthy treating relationship with the claimant may be entitled to greater weight than an 'acceptable medical source' such as a treating physician who has had infrequent contact with the claimant." Genovese v. Astrue, 2012 WL 4960355, *15 (E.D.N.Y. Oct. 17, 2012) (citing Saxon v. Astrue, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011) ("Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a nonacceptable medical source than a treating physician.")). This case may present such circumstances. On remand, the ALJ is directed to specifically address LMHC Dinse's opinion, and state the weight given to the opinion, keeping in mind the above principles. If the ALJ decides to give the opinion little or no weight, she must state her reasons based on the substantial evidence of record.

## 2. Physical Impairments

Plaintiff next contends that the ALJ failed to properly clarify Dr. Haddad's treating source opinion, in light of the fact that Dr. Haddad's treatment notes were largely illegible. As

discussed above, Dr. Haddad opined that plaintiff suffered from significant physical limitations. Dr. Haddad's opinion, if accorded controlling weight under the treating physician rule, would establish plaintiff's disability as a matter of law. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). There is no evidence in the record that the ALJ attempted to clarify Dr. Haddad's opinion or obtain his notes. It is clear from the legible portions of Dr. Haddad's notes, however, that Dr. Haddad treated plaintiff for impairments related to his disability application, including medication management apparently related to back pain.

The ALJ discussed the weight given to Dr. Haddad's opinion twice in her decision. First, the ALJ stated that she did not give Dr. Haddad's opinion controlling weight because it was "not well supported by the objective diagnostic testing reflected in the record and [was] inconsistent with other medical source statements in the record." T. 14. Later in the decision, the ALJ stated that she gave the opinion "little weight" because it "provid[ed] very little explanation of the evidence relied on in forming [the] opinion" and was "quite conclusory." T. 22.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial

13

evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Additionally, as the "Second Circuit has made clear, . . . an ALJ cannot simply discount a treating physician's opinion based on a lack of clinical findings that accompany that opinion. Rather, the ALJ has an affirmative duty to develop the record and seek additional information from the treating physician, sua sponte, even if plaintiff is represented by counsel." Jackson v. Barnhart, 2008 WL 1848624, *8 (W.D.N.Y. Apr. 23, 2008) (remanding the ALJ's decision in light of the ALJ's failure to develop the record due to illegible treatment notes) (quoting Colegrove v. Comm'r of Soc. Sec., 399 F. Supp. 2d 185, 196 (W.D.N.Y. 2005)); see also Stewart v. Colvin, 2015 WL 4546050, *7 (W.D.N.Y. July 28, 2015) (remanding where treating physician's notes were illegible, making it impossible to discern the basis for his opinion).

Because Dr. Haddad's notes are largely illegible, it is unclear whether those notes contain objective findings upon which Dr. Haddad could reasonably rely in forming his ultimate opinion as to plaintiff's functional limitations. Moreover, at least one treatment note appears to reference an X-ray, and it is unclear whether Dr. Haddad ordered such testing and whether those records appear or are absent from the record. See T. 343. Under these circumstances, rather than rejecting the opinion outright, the ALJ was obligated to recontact Dr. Haddad for clarification as to

(1) the contents of Dr. Haddad's largely illegible treatment notes and (2) whether additional objective evidence supported his opinion. See Seltzer v. Commissioner of Social Security, 2007 WL 4561120, *10 (E.D.N.Y. 2007) (finding that the ALJ should have obtained "more detailed and clearer statements from [his] treating physician[], especially since the medical records which appear in the administrative record are often illegible").

On remand, the ALJ is directed to recontact Dr. Haddad and clarify his opinion. The ALJ should request legible copies of Dr. Haddad's treatment notes, or an explanation of the findings contained therein. The ALJ is also directed to seek out any additional medical records, to the extent that they exist, regarding any additional objective results upon which Dr. Haddad relied in forming his opinion. After such clarification is obtained, the ALJ is directed to properly consider Dr. Haddad's opinion in light of the treating physician rule. See 20 C.F.R. § 416.927(c)(2). The Court emphasizes that, because the ALJ did not find any of plaintiff's physical impairments to be severe, on remand the ALJ must proceed anew through the five-step sequential analysis giving consideration to the complete fully developed record.

### B. Credibility

Having found remand necessary, the Court declines to address plaintiff's contention that the ALJ erroneously assessed her

15

credibility. This argument primarily addresses the ALJ's evaluation of the evidence in the record, which will "necessarily be altered" upon the ALJ's development of the record as directed by this Decision and Order. Crowley v. Colvin, 2014 WL 4631888, *5 (S.D.N.Y. Sept. 15, 2014). On remand, the ALJ should consider plaintiff's credibility in light of the newly developed record as a whole.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 12) is denied and plaintiff's motion (Doc. 8) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED**.

                                            **S/Michael A. Telesca**
                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    March 17, 2016
             Rochester, New York.